Ethan Jacobs (SBN 291838)
ethan@jacobslaw.com
Ethan Jacobs Law Corporation
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:  (415) 275-0845

Attorney for Defendants Dr. David Rabin,
Kathryn, Fantauzzi, and Apollo Neuroscience, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LESLIE SCOFIELD, an individual,<br><br>　　　Plaintiff,<br><br>v.<br><br>DR. DAVID RABIN, an individual;<br>KATHRYN FANTAUZZI, an individual;<br>APOLLO NEUROSCIENCE INC., a<br>Delaware Corporation; and DOES 1-10,<br><br>　　　Defendants. | Case No.: 3:25-cv-2021<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C §§ 1332, 1441, AND 1446**<br><br>(Removed from San Francisco Superior Court, Case No. CGC-24-620012) |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, AND TO THE CLERK OF THE ABOVE-ENTITLED COURT**:

PLEASE TAKE NOTICE that Defendants Dr. David Rabin, Kathryn Fantauzzi, and Apollo Neuroscience Inc. (collectively "Defendants"), hereby remove this case from the Superior Court of California, County of San Francisco, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, based on the following allegations:

**Procedural History and Timeliness of Removal**

1.　　**The State Action**. On November 22, 2024, Plaintiff Leslie Scofield commenced

1

an action in the San Francisco Superior Court entitled *Leslie Scofield, an individual, v. Dr. David Rabin, an individual; Kathryn Fantauzzi, an individual; Apollo Neuroscience Inc., a Delaware Corporation; and DOES 1-10*, designated as Case No. CGC-24-620012 (the "State Action"). Plaintiff alleges five claims against all Defendants in the State Action. Pursuant to 28 U.S.C. § 1446 (a), true and correct copies of all process, pleadings, and orders served on Defendants in the State Action are attached to this notice collectively as **Exhibit 1**.

2.     Defendant Apollo Neuroscience ("Apollo Neuro") is the only Defendant that has been served with process in the State Action. Service took place on January 27, 2025.

3.     None of the Defendants have pleaded, answered, or appeared in the State Action.

4.     **Timeliness of Removal**. This removal is timely because less than thirty days have passed since January 27, 2025, when Apollo Neuro was served with the Complaint and Summons. *See* 28 U.S.C. § 1446 (b).

**Basis for Removal Jurisdiction**

5.     **Jurisdiction and Divisional Assignment (Civil L.R. 3-5).** Removal to this Court is proper pursuant to 28 U.S.C. § 1441(b) because this action is between citizens of different states and the amount in controversy is more than $75,000 with respect to the Plaintiff Leslie Scofield's claims for breach of contract, fraud, false promise, and services rendered. Therefore, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

6.     **Supplemental Jurisdiction.** In addition to having diversity jurisdiction over Plaintiff's contract-based claims pursuant to 28 U.S.C. § 1332(a)(1), the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's remaining claim for relief, constructive trust, even if this Court does not have original jurisdiction for that equitable

claim because the Complaint makes clear on its face that all of Plaintiff's claims are substantially related to and arise from the same nucleus of operative facts such that they should be tried in one action. *See* 28 U.S.C. § 1367(a); *Shizuko Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990) ("[A] district court may exercise pendent jurisdiction over state law claims arising from a nucleus of operative fact common." (citing cases)). In addition, considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint; Plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

     **7.**     **Complete Diversity of Citizenship Exists.**

     a.  "To demonstrate citizenship for diversity purposes a [person] must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States." *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). Diversity "is determined (and must exist) as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). Upon information and belief, Plaintiff Leslie Scofield was a U.S. citizen domiciled in Los Angeles County, California, as of the date the Complaint was filed in the State Action and the date of removal. *See* Compl., ¶ 8. Ms. Scofield is, therefore, a citizen of California for the purposes of diversity jurisdiction. *See Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014) (permitting pleading diversity of citizenship on information and belief).

     b.  A corporation is "a citizen of every State . . . by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559

U.S. 77, 92-93 (2010) (also called the "nerve center" and is normally where the corporation maintains its headquarters "provided the headquarters is the actual center of direction, control, and coordination.") As of the date the Complaint was filed in the State Action, and as of the date of removal, Defendant Apollo Neuro was incorporated in Delaware and its principal place of business is in New York, where the majority of its employees work and where its officers direct, control, and coordinate its activities. *See* Compl., ¶ 11; Decl. of Kathryn Fantauzzi, ¶ 3. Apollo Neuro is, therefore, a citizen of both Delaware and New York for diversity jurisdiction.

c.  As of the date the Complaint was filed in the State Action, and as of the date of removal, Defendant Dr. David Rabin was a U.S. citizen domiciled in Bolton Landing, New York. Decl. of Dr. David Rabin, ¶ 2. Dr. Rabin is therefore a citizen of New York for the purposes of establishing diversity jurisdiction.

d.  As of the date the Complaint was filed in the State Action, and as of the date of removal, Defendant Kathryn Fantauzzi was a U.S. citizen domiciled in Bolton Landing, New York. Decl. of Kathryn Fantauzzi, ¶ 2. Ms. Fantauzzi is therefore a citizen of New York for the purposes of establishing diversity jurisdiction.

e.  The presence of Doe defendants named in the Complaint has no bearing on diversity jurisdiction with respect to removal. *See* 28 U.S.C. § 1441(b) ("[T]he citizenship of defendants sued under fictitious names shall be disregarded").

**8.       Matter in Controversy – Alleged Damages.**

a.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Without admitting that they engaged in any improper conduct, that Plaintiff's claims have any merit, or that Plaintiff is entitled to recover any relief from any Defendant, as requested in the Complaint or otherwise, Defendants aver that the total

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION
Case No. 3:25-cv-2021

matter in controversy in the State Action exceeds the sum of $75,000, exclusive of interest and costs, as required to establish diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

b.  The Complaint alleges five causes of action against Defendants: (1) Breach of Contract, (2) Fraud: Intentional Misrepresentation, (3) False Promise, (4) Services Rendered, and (5) Constructive Trust. *See* Compl., ¶¶ 56-97.

c.  Plaintiff unequivocally alleges $480,850.52 in damages for each of the five claims. *See* Compl., ¶¶ 54, 65, 75, 83, 90, and 96. Therefore, the amount in controversy is more than $75,000 based on a plain reading of the Complaint. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

d.  Plaintiff additionally seeks punitive damages, which are a part of the amount in controversy in a civil action where they are recoverable as a matter of state law. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action.").

**Other Considerations**

9.  **Joinder of Other Defendants**. Plaintiff served Apollo Neuro on January 27, 2025, but has not served any other Defendants. Because Dr. Rabin and Ms. Fantauzzi have not been served, their consent is not required to remove this action. *See Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011). They do, however, both consent to the removal of the State Action, and join in Apollo Neuro's notice of removal. *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient."). Because Dr. Rabin and Ms. Fantauzzi are citizens of New York, complete

diversity will continue to exist between the parties in this action, if they are properly served. *See Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969) ("Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service.").

10.     **Venue.** Venue is set in the Northern District of California pursuant to 28 U.S.C. § 1441(a) because the Superior Court where the removed case was pending, in the County of San Francisco, is located within this District.

11.     **Divisional Assignment (Civil L.R. 3-5(b)).** This action is properly removed to the San Francisco Division of the Northern District of California as the civil action arose in San Francisco County. *See* Civil L.R. 3-2(c).

12.     **Notice Provided to State Court.** Pursuant to 28 U.S.C. § 1446(d), Defendant will notify the Superior Court of California, County of San Francisco, of the filing of this Notice of Removal by filing a document entitled "Notice to Plaintiff of Removal of Civil Action to the United States District Court for the Northern District of California," with a copy of this Notice attached.

Accordingly, the Defendants respectfully submit that this case is properly removed pursuant to 28 U.S.C. § 1441 (b).

//

//

//

//

//

Dated:  February 26, 2025

ETHAN JACOBS LAW CORPORATION

By: /s/ Ethan Jacobs

Ethan Jacobs
Attorney for Defendants
DR. DAVID RABIN,
KATHRYN FANTAUZZI, and
APOLLO NEUROSCIENCE, INC.

7

# Exhibit 1

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

<table>
<tr><td></td><td><strong>FOR COURT USE ONLY</strong><br><em>(SOLO PARA USO DE LA CORTE)</em></td></tr>
</table>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

DR. DAVID RABIN, an individual; KATHRYN FANTAUZZI, an individual;
APOLLO NEUROSCIENCE INC., a Delaware Corporation; and Does 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

LESLIE SCOFIELD, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court

Civic Center Courthouse, 400 McAllister St. San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):* **CGC-24-620012**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jon Atabek SBN269497; Tiffany Chukiat SBN267347; Atabek and Co. 250 Newport Center Dr. 306, Newport Beach, CA 92660 949-229-0953

DATE: November 21, 2024    11/22/2024    Clerk, by    **MARIVIC VIRAY**    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* APOLLO NEUROSCIENCE, INC., a Delaware Corporation

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):* 1/27/2025

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Date Served: 1/27/2025    **SUMMONS**
Time Served: 3:39
Server:

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

12585537

Jon A. Atabek, Esq. (SBN 269497)
  (jatabek@atabekandco.com)
Tiffany D. Chukiat, Esq. (SBN 267347)
  (tchukiat@atabekandco.com)
**ATABEK & CO.**
250 Newport Center Drive, Suite 306
Newport Beach, CA 92660
Telephone:  (949) 229-0953
Facsimile:   (213) 402-3413

Attorneys for Plaintiff,
LESLIE SCOFIELD, an individual

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**11/22/2024**
**Clerk of the Court**
BY: MARIVIC VIRAY
Deputy Clerk

## THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| LESLIE SCOFIELD, an individual<br><br>Plaintiff,<br><br>v.<br><br>DR. DAVID RABIN, an individual;<br>KATHRYN FANTAUZZI, an individual;<br>APOLLO NEUROSCIENCE INC., a Delaware<br>Corporation; and Does 1-10,<br><br>Defendants. | Case No.:<br><br>**[JURY TRIAL DEMANDED]**<br><br>**COMPLAINT FOR DAMAGES:**<br>CGC-24-620012<br>1. **BREACH OF CONTRACT;**<br>2. **FRAUD: INTENTIONAL MISREPRESENTATION;**<br>3. **FALSE PROMISE;**<br>4. **SERVICES RENDERED;**<br>5. **CONSTRUCTIVE TRUST** |

**COMES NOW,** Plaintiff, LESLIE SCOFIELD, an individual, by and through her attorneys of record, and respectfully submits the following Complaint against Defendants, DR. DAVID RABIN, an individual; KATHRYN FANTAUZZI, an individual; APOLLO NEUROSCIENCE INC., a Delaware Corporation; and Does 1-10, and alleges as follows:

//

//

1
**COMPLAINT FOR DAMAGES**

**INTRODUCTION**

1.     This Complaint arises from the deliberate and systematic fraud perpetrated by Defendants APOLLO NEUROSCIENCE, INC. ("Apollo"), DR. DAVID RABIN ("Rabin"), and KATHRYN FANTAUZZI ("Fantauzzi") (collectively referred to as "Defendants"), who engaged Plaintiff LESLIE SCOFIELD ("Plaintiff" or "Scofield"), a renowned entrepreneur and branding expert, under false pretenses.

2.     Defendants solicited Plaintiff's extensive expertise in strategic partnerships, marketing, and fundraising to promote and raise capital for Apollo's wearable device, the Apollo wristband, without any genuine intent to compensate her fairly.

3.     Over the course of nearly two years, Plaintiff played a critical role in securing high-profile investments totaling millions of dollars, promoting the Apollo brand to influential figures, and facilitating partnerships that significantly elevated the company's market position. Despite these substantial contributions, Defendants repeatedly delayed formalizing the agreed-upon consulting terms, stringing Plaintiff along with verbal commitments, partial payments, and misleading correspondence designed to create the appearance of good faith.

4.     When Plaintiff requested formalization of the parties' agreed-upon terms of her compensation package, including a $15,000 monthly consulting fee, a five percent commission on funds raised, and advisor shares, Defendants attempted to alter the compensation terms in a manner that diminished her compensation and omitted key provisions. Further, Defendants never finalized any agreement, citing a plethora of excuses.

5.     Still, Plaintiff continued to perform consulting and fundraising services based upon Defendants' multiple reassurances that they would pay Plaintiff in full and in accordance with the agreed-upon terms.

6.     Ultimately, Defendants refused to pay Plaintiff all sums due to her.  As a result, Defendants have reaped the benefits of Plaintiff's rendered services despite depriving her of the consulting fees, commissions, and shares unequivocally owed to her.

7.     Through this action, Plaintiff seeks to recover the compensation she rightfully earned, as well as damages for the fraudulent scheme orchestrated by Defendants.

**PARTIES**

8.     Plaintiff Leslie Scofield is, and, at all times relevant hereto, was an individual who resides in Los Angeles County, California.

9.     Defendant Dr. David Rabin is, and, at all times relevant hereto, was an individual who is domiciled in the State of Pennsylvania. Rabin is the Co-Founder & Chief Medical Officer of Apollo



**COMPLAINT FOR DAMAGES**

Neuroscience, Inc.

10. Defendant Kathryn Fantauzzi is, and, at all times relevant hereto, was an individual who resides in the State of California. Fantauzzi is the Co-founder & CEO of Apollo Neuroscience, Inc.

11. Defendant Apollo Neuroscience, Inc. is, and, at all times relevant hereto, was a corporation incorporated in the State of Delaware, and is headquartered in San Francisco, California.

12. Plaintiff does not know the true names of defendants DOES 1 through 10, inclusive, and therefore sues them by those fictitious names. Plaintiff is informed and believes, and on the basis of that information and belief, alleges that each of those defendants was in some manner intentionally and proximately responsible for the events and happenings alleged in this Complaint and for Plaintiff's injuries and damages.

13. Plaintiff is informed and believes, and based on this information and belief alleges, that at all times mentioned in this Complaint, Defendants were the alter-egos, partners, joint-venturers, or other co-responsible parties to their codefendants.

14. Hereafter, references to Defendants shall be deemed to include all named Defendants, unless otherwise indicated.

## JURISDICTION AND VENUE

15. Venue is proper in this Court in accordance with California Code of Civil Procedure section 395 because the contract was entered into in the County of Los Angeles and the contract was to be performed in the County of Los Angeles.

16. Jurisdiction is proper in this Court because the acts giving rise to the allegations herein occurred and/or failed to occur in the County of Los Angeles, State of California.

17. Also, the amount in controversy in this matter exceeds the sum of $35,000.00, exclusive of penalties, interest, and costs.

## FACTS APPLICABLE TO ALL CLAIMS

18. Plaintiff is a dynamic entrepreneur renowned for her ability to connect talented individuals and forge strategic alliances. Her extensive experience in branding, product launches, fundraising, and marketing has contributed to the success of notable brands like TOMS Shoes.

19. Currently, Plaintiff focuses on guiding early-stage startups, where she leverages her expertise to fuel growth through fundraising, branding, and partnerships.

//

//

3

**COMPLAINT FOR DAMAGES**

**A.     Defendants' Introduction to Plaintiff and Initial Discussions of Business Relationship.**

20.     On or about September 15, 2022, Plaintiff met Rabin at a conference. During their initial meeting, Rabin told Plaintiff about his company, Apollo, and about Apollo's products.  In pertinent part, Rabin regaled Plaintiff with the health benefits of the Apollo wristband, which Rabin describes as a wearable device designed to improve stress resilience, focus, and sleep through soothing vibrations that engage the body's nervous system.

21.     Additionally, during this initial meeting, Plaintiff and Rabin discussed the possibility of entering into a business arrangement wherein Plaintiff would provide consulting, fundraising, and marketing services to promote Apollo and its products in exchange for payment by Defendants to Plaintiff in the form of money and Apollo company shares.

22.     On or about September 30, 2022, Plaintiff participated in a telephone call with Rabin and Fantauzzi wherein they further discussed potential terms for Plaintiff's consulting and fundraising services for the benefit of Apollo.  During this call, the parties agreed that Plaintiff's compensation package would include, in pertinent part, 1) a $15,000 monthly consulting fee for three months; 2) 5% commission on funds raised as a result of Plaintiff's efforts, and 3) approximately 10,000 shares in Apollo ("**Agreement**").

**B.     Plaintiff Commences Consulting Services and Fundraising Efforts.**

23.     On or about October 3, 2022, in connection with the Agreement, Plaintiff introduced the Apollo wristband to the Dalai Lama and began promoting the Apollo wristband to potential investors.

24.     By December 2022, Plaintiff had performed substantial consulting and fundraising services, including contacting potential investors to obtain fundraising capital for Apollo.

25.     However, despite the provision of her valuable services, Plaintiff had not received any compensation under the Agreement.

26.     As such, she sought to memorialize the terms of the Agreement in a written document. She also communicated her

27.     On December 20, 2022, Plaintiff sent the following email to Rabin and Fantauzzi, summarizing their previously discussed terms:

> Hi team,
>
> I am trying to finish up any loose ends this week before I leave for New Years with [Investor 1]. I know we are behind on this and wanted to see what the status was and if we can finalize this week.

/ /



**COMPLAINT FOR DAMAGES**

Just to confirm via email until paperwork, this is what I had down from what you and I talked about K. I know Dr. D is taking over from here!

- 15k a month retainer on consulting and time (10k paid each month until 2 mil is raised then the extra will be paid back)
- 5% of money raised (taken in either cash or equity or a mix of both)
- advisor shares (from what I remember is was around 10k shares, but you were going to send over what that meant and connect me to your CFO)
- start date backdated to Nov 1
- we'll reconnect month three and see if we need to
- % of sales for partnership deals to be discussed or we can come up with it now in this agreement or post money raised as we navigate next steps for me to help you grow.

If I missed anything, please let me know. Or if there is an issue I am unaware of, please let me know as well.

Also, who do I send invoice to for Nov and Dec?

Look forward to continuing to make magic happen!!

Leslie.

28.    Rabin responded on the same day, confirming his intent to formalize the deal.  In this response e-mail of the same date, he stated:

Thanks Leslie!

I'm getting this taken care of for you this week!

29.    Later that day, December 20, 2022, Rabin sent another email clarifying the terms:

Here are the clarified terms for you to review:

[1]    $10K per month. After $1M is raised via Leslie's contacts, balance of $15K ($5K per month for 3 months) is paid out in cash to Leslie [$15,000 per month for 3 months][;]

[2]    3-month term with option to renew on a month-by-month basis thereafter [;]

[3]    5% of whatever is raised (as cash or equity or mix) Target raise - $5M [;]

[4]    9,800 advisory shares, which based on our Series A valuation, amounts to $132K as of today. Advisory shares would vest over 2 years.

Any questions?

Dr. David Rabin, MD, PhD

30.    In response, Plaintiff confirmed the terms set forth in Rabin's December 20 E-mail and continued providing her consulting and fundraising services to Defendants.



**COMPLAINT FOR DAMAGES**

31. On December 22, 2022, Defendants sent Plaintiff a draft of a written contract purporting to memorialize the terms set forth in Rabin's December 20, 2022 ("December 2022 Draft").

32. However, upon Plaintiff's review and analysis of Defendants' December 2022 Draft, Plaintiff discovered it its payment terms were substantially different from those contained in Rabin's December 20 E-mail.

33. For example, the December 2022 Draft omitted the provision entitling Plaintiff to five percent commissions on investments secured through Plaintiff's efforts.

34. Meanwhile, relying on Defendants continuing assurances of full payment, Plaintiff trusted that Defendants would compensate her in accordance with the terms of their September 30, 2022 Agreement (which were further memorialized in Rabin's December 20 E-mail), and she continued to provide her consulting and fundraising services.

35. For example, on Friday, December 23, 2022, Fantauzzi sent Plaintiff text messages stating: "Also, when you get a chance, can you send me your wire information so we can pay you? I'll need it by Thursday [December 29, 2022] so the wire goes out on Friday [December 30, 2022] ("**Fantauzzi's December 2022 Representation**").

36. In fact, Plaintiff received no payment in any amount from Defendants in December 2022 despite Fantauzzi's December 2022 Representation stating that a payment would be completed.

37. Plaintiff trusted that Defendants would keep their word and pay her according to the Agreement. As a result, she continued to invest her own time, resources, and effects into her business relationship with Defendants, foregoing other opportunities to provide services for her other clients and build those relationships.

**C.    Plaintiff Secured Over $5.25 Million in Investments for Apollo.**

38. In December 2022, Plaintiff contacted an entrepreneur ("Investor 1") to solicit an investment in Apollo. Plaintiff successfully secured from Investor 1 a $3 million investment in Apollo, entitling her to a 5% commission in the amount of $150,000.

39. In or around September 2023, Plaintiff secured an additional $250,000 investment from another entrepreneur ("Investor 2"), entitling her to an additional 5% commission in the amount of $12,500.

40. Subsequently, Plaintiff also secured a $2 million investment from another investor ("Investor 3"), entitling Plaintiff to a 5% commission in the amount of $100,000.

//

**COMPLAINT FOR DAMAGES**

**D.    Defendants' Attempts to Alter the Terms of the Agreement and Failures to Pay.**

41.    Plaintiff provided her consulting and fundraising services under the parties' Agreement for a total of nine (9) months, beginning in November 2022 and ending in August 2023—well beyond the initial three-month term.

42.    On September 2, 2023, after numerous demands from Plaintiff and repeated false reassurances of payment, Rabin sent a text message to Plaintiff stating that Apollo owed Plaintiff a total of only $190,634.60.  In this text message, Rabin admitted that he owed Plaintiff the following sums:

- $150,000 for [Investor 1's] $3 million investment;
- $12,500 for [Investor 2's] $250,000 investment;
- "9,800 advisor shares worth $133,350.52"; and
- $30,000 in consulting fees ($10,000 per month for 3 months).

43.    The sums identified in Rabin's September 2, 2023 text message were not inaccurate; the amounts identified therein were only a portion of the total sums due to Plaintiff.  For example, Defendants stated that Plaintiff was entitled to $10,000 per month in consulting fees, contradicting their Agreement to pay Plaintiff a $15,000 monthly consulting fee rate.[1]  Furthermore, Rabin's September 2, 2023 text message failed to account for the reality that Plaintiff had provided services for a total of nine months (as opposed to only three).

**E.    Plaintiff Drafted a Revised Consulting Agreement to Facilitate Defendants' Payment of a Satisfactory Amount to Compensate Plaintiff for Her Rendered Services.**

44.    From August 2023 to December 2023, Defendants continued to provide assurances to Plaintiff that they would finalize a written compensation agreement and that they would pay Plaintiff in accordance with the terms of the September 30, 2022 Agreement.

45.    In or around December 2023, Plaintiff sent to Defendants a revised proposed consulting agreement intended to allow Defendants to pay off their total outstanding balance under the Agreement at a discount.  At that time, Plaintiff was amenable to a discounted payment total so that Plaintiff could be paid as soon as possible in an amount that was satisfactory to Plaintiff ("Plaintiff's December 2023 Draft").

46.    In response, on December 29, 2023, Fantauzzi sent Plaintiff an email stating, in pertinent part: "I reviewed your agreement with the finance team. We're good to wire the $65K retainer to you

---

[1] As stated in Rabin's December 22 E-mail, the parties agreed that Plaintiff's monthly consulting fee would be $15,000. The parties discussed that this fee could be paid as follows: 10K per month, and after "$1M is raised via Leslie's contacts," balance of $15K ($5K per month for 3 months) is paid out in cash to Leslie [$15,000 per month for 3 months]."

**COMPLAINT FOR DAMAGES**

on Tuesday [January 2, 2024] (the soonest next banking day). Wires for the $23,750 for each monthly payment for services rendered can be paid at month end. . . If you're good with this, I can circulate for signatures today. Please let me know and I'll send that via hellosign and get your wire queued up" ("Fantauzzi December 2023 Representation").

47.     Plaintiff responded to the Fantauzzi December 2023 Representation, confirming her amenability to the payments identified in Fantauzzi December 2023 Representation.

48.     Plaintiff believes that Fantauzzi made the Fantauzzi December 2023 Representation with no intent to complete the entirety of the payments discussed therein. Instead, Fantauzzi made the Fantauzzi December 2023 Representation to further delay and prevent Plaintiff from enforcing her rights under the Agreement.

49.     Additionally, in or around January 2024, Fantauzzi even verbally agreed to pay Plaintiff an additional $15,000 as compensation for the damages caused by the late payments.

50.     Despite Plaintiff's confirmation of her amenability to the payments set forth in the Fantauzzi December 2023 Representation, Defendants did not sign Plaintiff's December 2023 Draft.

51.     Defendants made only one partial payment to Plaintiff of $65,000 as contemplated under Plaintiff's December 2023 Draft. Defendants failed and refused to make any further payments as contemplated under Plaintiff's December 2023 Draft.

**F.      Total Amount Due to Plaintiff.**

52.     On January 30, 2024, Defendants paid only $65,000 for Plaintiff's rendered services. This amount was only a fraction of the total sum due and payable to Plaintiff under the parties' Agreement.

53.     Under the parties' Agreement, and as memorialized in Rabin's December 20 E-mail, Defendants owe Plaintiff the following sums:

     i)       $135,000 in unpaid consulting fees for nine months of work, at $15,000 per month;

     ii)      $150,000, representing the agreed-upon five percent commission on Investor 1's $3 million investment;

     iii)     $12,500, the agreed-upon five percent commission on Investor 2's $250,000 investment;

     iv)     9,800 advisor shares worth $133,350.52;

     v)      $100,000, representing the agreed-upon five percent commission on Investor 3's investment;

     vi)     $15,000 in late payment damages, as verbally promised by Defendants;



**COMPLAINT FOR DAMAGES**

**Total:        $545,850.52**

54.    Since January 30, 2024 (and incorporating Defendants' $65,000 payment), Defendants have maintained an unpaid balance of **$480,850.52.**

55.    Daily interest in the amount of 10% has accrued at the rate of $113.93 per day since January 30, 2024.

## FIRST CAUSE OF ACTION

### (Breach of Contract by Plaintiff against Defendants)

56.    Plaintiff re-alleges and incorporates by reference into this cause of action each allegation set forth in each paragraph of this Complaint.

57.    On September 30, 2022, Plaintiff entered into the Agreement with Defendants. Under the Agreement, Plaintiff was to provide consulting, fundraising, and marketing services to Defendants in exchange for Apollo's payment of 1) a $15,000 monthly consulting fee for three months; 2) 5% commission on funds raised as a result of Plaintiff's efforts, and 3) approximately 10,000 shares in Apollo.

58.    The terms of the Agreement were further memorialized and confirmed by Rabin in his December 20 E-mail, which stated:

Here are the clarified terms for you to review:

[1]        $10K per month. After $1M is raised via Leslie's contacts, balance of $15K ($5K per month for 3 months) is paid out in cash to Leslie [$15,000 per month for 3 months][;]

[2]        3-month term with option to renew on a month-by-month basis thereafter [;]

[3]        5% of whatever is raised (as cash or equity or mix) Target raise - $5M [;]

[4]        9,800 advisory shares, which based on our Series A valuation, amounts to <u>$132K</u> as of today. Advisory shares would vest over 2 years.

59.    In a September 2, 2023 text message to Plaintiff, Rabin further clarified that the 9,800 advisory shares were worth $133,350.52.

60.    Under the parties' Agreement, and as memorialized in Rabin's December 20 E-mail, Defendants owe Plaintiff the following sums:

i)        <u>$135,000</u> in consulting fees for nine months of work, at $15,000 per month;

//



---

9

**COMPLAINT FOR DAMAGES**

ii)　　$150,000, representing the five percent commission on Investor 1's $3 million investment;

iii)　　$12,500, representing the five percent commission on Investor 2's $250,000 investment;

iv)　　9,800 advisor shares worth $133,350.52;

v)　　$100,000, representing the five percent commission on Investor 3's investment;

vi)　　$15,000 in late payment damages, as verbally promised by Defendants to compensate for Defendants' late payments;

**Total Owed: $545,850.52**

61.　　Plaintiff performed all obligations owed by her to Defendants, except those that were not due or excused.

62.　　Defendants have breached their obligations under the Agreement by failing to pay all sums due to Plaintiffs for her services.

63.　　In January 2024, Defendants made partial payment of $65,000.

64.　　To date, Defendants maintain an unpaid principal balance in an amount of at least $480,850.52.

65.　　Plaintiff has been damaged by Defendants' breach in an amount of at least $480.850.52, representing the service fees and commissions owed to Plaintiff under the Agreement, not including daily interest in the amount of approximately $113.93.

## SECOND CAUSE OF ACTION

### (Intentional Misrepresentation by Plaintiff against Fantauzzi and Apollo)

66.　　Plaintiff re-alleges and incorporates by reference into this cause of action each allegation set forth in each paragraph of this Complaint.

67.　　Fantauzzi is the CEO of Apollo, who made numerous representations, on her own behalf and on behalf of Apollo, to Plaintiff, assuring Plaintiff that payments under the Agreement would be completed in due time. Defendants Fantauzzi and Apollo made the below representations, with knowledge of their falsity and that Apollo would not honor their representations. Defendants Fantauzzi and Apollo made the below representations with the intent to convince Plaintiff to continue performing valuable services despite knowing that Defendants would never pay Plaintiff the amounts they continued to promise and to delay Plaintiff from enforcing her rights under the Agreement.

68.　　On December 23, 2022, Fantauzzi sent Plaintiff text messages stating: "Also, when you get a chance, can you send me your wire information so we can pay you? I'll need it by Thursday



**COMPLAINT FOR DAMAGES**

[December 29, 2022] so the wire goes out on Friday [December 30, 2022] ("Fantauzzi's December 2022 Representation").

69.    In fact, Plaintiff received no payment in any amount from Defendants in December 2022 despite Fantauzzi's December 2022 Representation stating that a payment would be completed.

70.    Based on Fantauzzi's December 2022 Representation, Plaintiff continued to invest her own time, resources, and effects into her business relationship with Defendants, foregoing other opportunities to provides services for her other clients and build those relationships.

71.    In addition, or around December 2023, Plaintiff sent to Defendants a revised proposed consulting agreement intended to allow Defendants to pay off their total outstanding balance under the Agreement at a discount.  At that time, Plaintiff was amenable to a discounted payment total so that Plaintiff could be paid as soon as possible in an amount that was satisfactory to Plaintiff ("Plaintiff's December 2023 Draft").

72.    In response, on December 29, 2023, Fantauzzi sent Plaintiff an email stating, in pertinent part: "I reviewed your agreement with the finance team. We're good to wire the $65K retainer to you on Tuesday [January 2, 2024] (the soonest next banking day).  Wires for the $23,750 for each monthly payment for services rendered can be paid at month end. . . If you're good with this, I can circulate for signatures today. Please let me know and I'll send that via hellosign and get your wire queued up" ("Fantauzzi December 2023 Representation").

73.    Plaintiff responded to the Fantauzzi December 2023 Representation, confirming her amenability to the payments identified in the Fantauzzi December 2023 Representation.

74.    Plaintiff believes that Fantauzzi made the Fantauzzi December 2023 Representation with no intent to complete the entirety of the payments discussed therein.  Instead, Fantauzzi made the Fantauzzi December 2023 Representation to further delay and prevent Plaintiff from enforcing her rights under the Agreement.

75.    Based upon the misrepresentations by Fantauzzi and Apollo, Plaintiff has been damaged by Defendants' conduct in an amount of at least $480,850.52 to be proven at trial.

76.    In addition, Defendants' conduct was fraudulent and so despicable that it would shock the conscience of an ordinary person, entitling Plaintiff to recover exemplary damages from Defendants pursuant to Cal. Civ. Code section 3294.

### THIRD CAUSE OF ACTION

#### (False Promise against Defendants)

77.    Plaintiff re-alleges and incorporates by reference into this cause of action each allegation set forth in each paragraph of this Complaint.

78. After failing to timely pay Plaintiff under the terms of their Agreement, Defendants promised Plaintiff that they would pay Plaintiff all amounts due to her thereunder.

79. Defendants intended that Plaintiff rely on these promises.

80. Defendants did not perform their promised actions.

81. As a result, Plaintiff has been harmed by her reliance on Defendants' promises by continuing to perform services under the Agreement.

82. Plaintiff's reliance on Defendants' promises was a substantial factor in causing Plaintiff's harm.

83. As a result of Defendants' false promises, Plaintiff has been damaged by Defendants' breach in an amount of at least $480,850.52, to be proven at trial.

84. In addition, Defendants' conduct was fraudulent and so despicable that it would shock the conscience of an ordinary person, entitling Plaintiff to recover exemplary damages from Defendants pursuant to Cal. Civ. Code section 3294.

## FOURTH CAUSE OF ACTION

### (Services Rendered by Plaintiff against Defendants)

85. Plaintiff re-alleges and incorporates by reference into this cause of action each allegation set forth in each paragraph of this Complaint.

86. Plaintiff provided valuable services to Defendants, including introductions to key investors and the promotion of the Apollo wristband to influential figures like the Dalai Lama.

87. Defendants directly benefited from Plaintiff's services, securing investments totaling $5.25 million. Defendants accepted Plaintiff's contributions without objection and continued to utilize her expertise for an extended period.

88. Plaintiff reasonably expected to be compensated under the terms of the Agreement and the parties' understanding that Plaintiff would be compensated for her services.

89. Defendants failed to compensate Plaintiff fully, paying only $65,000 while withholding the remainder of the owed sums.

90. As a result of Defendants' false promises, Plaintiff has been damaged by Defendants' conduct in an amount of at least $480,850.52, to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Constructive Trust by Plaintiff against Defendants)

91. Plaintiff re-alleges and incorporates by reference into this cause of action each allegation set forth in each paragraph of this Complaint.

/ /



**COMPLAINT FOR DAMAGES**

92.     Pursuant to the Agreement, Plaintiff provided nine months of consulting services and obtained $5.25 million in investments for the benefit of Defendants.

93.     Although Defendants did not timely pay Plaintiff for her services, Defendants provided multiple assurances to Plaintiff that she would be paid in full.  Defendants convinced her to continue providing services despite Defendants' tardiness.

94.     Based on Defendants' reputations, Plaintiff accepted Defendants' statements, relied on Defendants' promises of full payment, and continued to provide her services.

95.     Despite benefiting from Plaintiff's services, Defendants refused to pay her the compensation to which she is entitled under the Agreement.  Defendants made one payment to Plaintiff in the amount of $65,000, but have failed and refused to pay her the remaining amount she is owed.

96.     Plaintiff has been damaged by Defendants breach in an amount of at least $480,850.52, representing the service fees and commissions owed to Plaintiff under the Agreement.

97.     As such, Plaintiff seeks a constructive trust over Defendants' property in the amount of $480,850.52, constituting the amount which Defendants continue to wrongfully withhold from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

### As to the First Cause of Action: Breach of Contract

1.     For damages in the amount of no less than $480,850.52;

2.     For costs of suit incurred herein;

3.     Pre-judgment interest at the maximum rate allowed under California law; and

4.     For any other and further relief as the Court deems just and proper.

### As to the Second Cause of Action: Intentional Misrepresentation

1.     For damages in the amount of $480.850.52;

2.     For punitive damages under Cal. Civ. Code section 3294;

3.     For costs of suit incurred herein;

4.     Pre-judgment interest at the maximum rate allowed under California law; and

5.     For any other and further relief as the Court deems just and proper.

### As to the Third Cause of Action: False Promise

1.     For damages in the amount of $480,850.52;

2.     For punitive damages under Cal. Civ. Code section 3294;

3.     For costs of suit incurred herein;

4.     Pre-judgment interest at the maximum rate allowed under California law; and



**COMPLAINT FOR DAMAGES**

5. For any other and further relief as the Court deems just and proper.

**As to the Fourth Cause of Action: Services Rendered**

1. For damages in the amount of no less than $480,850.52;

2. For costs of suit incurred herein;

3. Pre-judgment interest at the maximum rate allowed under California law; and

4. For any other and further relief as the Court deems just and proper.

**As to the Fifth Cause of Action: Constructive Trust**

1. For a constructive trust to be imposed over Defendants' assets in the amount of at least $480,850.52, constituting the wrongfully withheld funds belonging to Plaintiff currently in Defendants' possession; and

2. For any other and further relief as the Court deems just and proper.

**On All Causes of Action**

1. For all statutorily allowed damages;

2. For costs of suit incurred herein;

3. Pre-judgment interest at the maximum rate allowed under California law;

4. For such other and further relief the Court deems just and proper.

Dated: November 21, 2024

**ATABEK & CO.**

/s/Jon Atabek
Jon A. Atabek, Esq,
Tiffany D. Chukiat, Esq.
Attorneys for Plaintiff,
LESLIE SCOFIELD, an individual



---

14
**COMPLAINT FOR DAMAGES**

## DEMAND FOR JURY TRIAL

Plaintiff, LESLIE SCOFIELD, hereby demands a trial by jury on all of its claims triable to a jury.

Dated: November 21, 2024                    **ATABEK & CO.**

                                            */s/Jon Atabek*
                                            Jon A. Atabek, Esq,
                                            Tiffany D. Chukiat, Esq.
                                            Attorneys for Plaintiff,
                                            LESLIE SCOFIELD, an individual

---

1
**DEMAND FOR JURY TRIAL**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Atabek and Co., Jon A. Atabek, Esq. SBN 269497; Tiffany D. Chukiat, Esq. SBN 267347<br>250 Newport Center Drive, Suite 206, Newport Beach, CA 92660<br><br>TELEPHONE NO.: 949-229-0953　　　　　　FAX NO. :<br>EMAIL ADDRESS: jatabek@atabekandco.com; tchukiat@atabekandco.com<br>ATTORNEY FOR *(Name):* LESLIE SCOFIELD | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**11/22/2024**<br>**Clerk of the Court**<br>BY: MARIVIC VIRAY<br>**Deputy Clerk** |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco<br>STREET ADDRESS: 400 McAllister St.<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Francisco, CA 94102<br>BRANCH NAME: Civic Center Courthouse | |
| CASE NAME:<br>LESLIE SCOFIELD v. DR. DAVID RABIN, KATHRYN FANTAUZZI, APOLLO NEUROSCIENCE INC | **CGC-24-620012** |

| **CIVIL CASE COVER SHEET**<br>[x] **Unlimited**　　[ ] **Limited**<br>(Amount　　　　(Amount<br>demanded　　　demanded is<br>exceeds $35,000)　$35,000 or less) | **Complex Case Designation**<br>[ ] Counter　　[ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br><br>JUDGE:<br>DEPT.: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[x] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [ ] is  [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties
    b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c. [ ] Substantial amount of documentary evidence
    d. [ ] Large number of witnesses
    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f. [ ] Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4.  Number of causes of action *(specify):* 5
5.  This case [ ] is  [x] is not   a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 21, 2024

Jon A. Atabek, Esq.
_____
(TYPE OR PRINT NAME)

▶ */s/Jon Atabek*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only. **Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

---

CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | | Clear this form |



**Superior Court of California, County of San Francisco**
**Alternative Dispute Resolution**
**Information Package**



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**
It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:
- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

**WHAT ARE THE ADR OPTIONS?**
The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**
Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF): The ADR DEPARTMENT OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF), in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. BASF's panel of experienced, professional and impartial mediators work with parties to help them arrive at mutually agreeable solutions. Parties can select their mediator from the website www.sfbar.org/mediation or BASF can assist with mediator selection. BASF pre-screens all mediators based upon strict educational and experience requirements and handles administrative matters, including conflict checks and case management. BASF charges an initial fee of $295 per party, which covers (1) BASF's administration costs, (2) the first hour of preparation time, and (3) the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate, which varies depending on the mediator selected. Waivers of BASF's fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

(B) JUDICIAL MEDIATION PROGRAM provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

(C) PRIVATE MEDIATION: Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

(D) COMMUNITY BOARDS MEDIATION SERVICES: Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

## 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
adrcoordinator@sftc.org
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS.   THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.</u>

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br> ATTORNEY FOR *(Name)*: | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO** <br> 400 McAllister Street <br> San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: <br><br> DEFENDANT/RESPONDENT: | |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: _____ |
|---|---|
| | **DEPARTMENT 610** |

**1)    The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐    **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of$295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐    **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐    **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐    **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. https://sf.courts.ca.gov/divisions/civil-division/alternative-dispute-resolution

☐    **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. https://sf.courts.ca.gov/divisions/civil-division/alternative-dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation): _____

☐30-90 days ☐ 90-120 days ☐ Other (please specify) _____

☐    **Other ADR process (describe)** _____

**2)    The parties agree that the ADR Process shall be completed by (date): _____**
**3)    Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

| | |
|---|---|
| _____ <br> Name of Party Stipulating | _____ <br> Name of Party Stipulating |
| _____ <br> Name of Party or Attorney Executing Stipulation | _____ <br> Name of Party or Attorney Executing Stipulation |
| _____ <br> Signature of Party or Attorney | _____ <br> Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated _____ | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  04/24                    **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CASE NUMBER: CGC-24-620012  LESLIE SCOFIELD VS. DR. DAVID RABIN ET AL

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**    **APR 23, 2025**

**TIME:**    **10:30 am**

**PLACE:**    **Department 610**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order   **without an appearance**   at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.   **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at https://sf.courts.ca.gov under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

**(SEE LOCAL RULE 4)**

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at https://sf.courts.ca.gov/divisions/civil-division/alternative-dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**adrcoordinator@sftc.org**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

 **Superior Court of California, County of San Francisco**
**Information Sheet**
**Voluntary Expedited Jury Trial Summary**

The San Francisco Superior Court encourages the use of Voluntary Expedited Jury Trials ("EJTs") in appropriate cases. EJTs provide an excellent opportunity to resolve your client's case in an expeditious and inexpensive way. Voluntary EJTs are authorized by statute. CCP §§ 630.01.

EJTs can resolve your entire case **or** a single important case critical issue that, once adjudicated, can promote resolution of the entire case (for example: course and scope of employment, causation of an injury, whether a contract was formed, etc.) EJTs promote equal access to civil justice as they are less expensive, consume fewer courtroom days, provide flexibility throughout, encourage high/low agreements to limit risk, and feature streamlined pre-trial procedures.

These are highlights of an EJT (C.C.P. §§ 630.01 et seq. and Rules of Court 3.1549 - 3.1553):

- Parties encouraged to submit a joint jury questionnaire;

- 8 jurors (6 must agree);

- 3 peremptory challenges per side;

- 5-hour time limit per side <u>unless agreed otherwise and approved;</u>

- One to two court days completion <u>unless agreed otherwise and approved;</u>

- Option to present evidence by stipulation and objection;

- High/low arrangement option;

- Limited appeal (misconduct by judge or jury substantially affecting parties' rights or corruption, or bad faith.)

If the parties agree to the Voluntary EJT, they should file and serve the completed and signed (Proposed) Consent Order for Voluntary Expedited Jury Trial, Judicial Council Form EJT-020.

**<u>CERTIFICATE OF SERVICE</u>**

On February 26, 2025, I electronically filed the foregoing document with the Clerk of the Court by using CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF, and by first-class mail. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served to the following:

Jon A. Atabek, Esq. (SBN 269497)
jatabek@atabekandco.com
Tiffany D. Chukiat, Esq. (SBN 267347)
tchukiat@atabekandco.com
Atabek & Co.
250 Newport Center Drive, Suite 306
Newport Beach, CA 92660
Telephone: (949) 229-0953
Facsimile: (213) 402-3413

Dated: February 26, 2025

/s/ Ethan Jacobs
Ethan Jacobs (SBN 291838)
ethan@jacobslaw.com
Attorney for Defendants
DR. DAVID RABIN, KATHRYN FANTAUZZI,
and APOLLO NEUROSCIENCE, INC.

1